CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 0 8 2006

JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CURTIS LYNN MORGAN,<br> Petitioner, | )<br>) Case No. 7:05-cv-00636<br>) Case No. 7:03-cr-00084<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| UNITED STATES OF AMERICA,<br> Respondent. | ) By: Hon. James C. Turk<br>) Senior United States District Judge |

  Petitioner Curtis Lynn Morgan, a federal inmate proceeding pro se, brought this action as a motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255. By previous opinion and order, the court found that Morgan had entered into a valid plea agreement waiver of his right to appeal or collaterally attack the judgment or sentence in the criminal proceedings against him, Case No. 7:03-cr-00084. The court concluded, however, that one claim fell outside the scope of Morgan's waiver of § 2255 rights: his claim that after he informed counsel of his desire to appeal, counsel failed to file a notice of appeal. The court appointed counsel to represent Morgan and on October 17, 2006, conducted an evidentiary hearing on this matter. The court heard testimony from Morgan and from his court-appointed trial counsel. Pursuant to Fed. R. Civ. P. 52(a), the following opinion sets forth the court's findings of fact and conclusions of law. For the reasons stated, the court now concludes that Morgan is entitled to relief under § 2255 in the form of a renewed opportunity to appeal his criminal sentence.

## THE EVIDENCE

  Morgan faced a June 19, 2003 indictment charging him with conspiracy to distribute controlled substances (Count 1); carrying a firearm during and in relation to a drug trafficking offense (Counts 2, 6, and 9); possession with intent to distribute a controlled substance (Counts 3-5 and 8); and being a felon in possession of firearms (Count 7). If convicted on all counts, he faced statutory mandatory minimum sentences of sixty-five years in prison. On March 1, 2004, Assistant United States Attorney Ruth E. Plagenhoef wrote to Morgan's court-appointed counsel, James Gregory ("Gregory"), about a proposed plea agreement allowing Morgan to plead guilty to Counts

1

1, 2, 8, and 9. (Pl. Ex. 1). The letter first recited that two of Morgan's co-defendants had pled guilty under plea agreements to fifteen-year sentences, and then summarized the government's evidence that Morgan had possessed, used, and traded guns in relation to his drug trafficking activities. (Pl. Ex. 1). The last paragraph of the letter read: "I hope this helps Mr. Morgan understand the strength of the evidence against him and my view of his relative culpability. I think a deal in which he gets 15 years instead of 65 is pretty fair." (Pl. Ex. 1).

On March 5, 2004, Morgan pled guilty pursuant to a plea agreement. Section 1 of the agreement recited all the charges against Morgan in the indictment. This section correctly stated that Morgan faced a mandatory minimum sentence of ten years on Count 1 and a maximum sentence of life on Count 1 and thirty years on Count 2. Section 1 erroneously stated, however, that the maximum sentences Morgan could receive on Counts 2 and 9 were five years and twenty-five years respectively; in fact, these sentence amounts are the statutory mandatory minimums for those offenses. Section 15 of the plea agreement stipulated Morgan's opportunity to earn a motion for sentence reduction, as to Count 9 only, if he provided substantial assistance; the agreement stated that the United States would not agree to a departure below the "fifteen year mandatory minimum total sentences" of Counts 1 and 2.

After ordering a presentence report, the court conducted a sentencing hearing on October 14, 2004, with Assistant United States Attorney Don Wolthuis substituted for Ms. Plagenhoef as counsel for the government. The government moved for a reduction of sentence on Morgan's behalf as to Count 9. Based on Morgan's prior criminal convictions as recited in the presentence report, however, the court found that Morgan qualified as a career offender under Section 4B1.1 of the United States Sentencing Guidelines ("USSG"). With the resultant base offense level of 37 (minus three points for acceptance of responsibility) and criminal history category of VI, Morgan's sentencing range under the USSG was 262 to 327 months for Counts 1 and 8, the drug offenses. The court sentenced him to 262 months on those counts, concurrent with each other, and to 60 months on Count 2, consecutive to the sentences on Counts 1 and 8. Granting the government's motion for

reduction based on Morgan's substantial assistance, the court reduced the mandatory minimum of twenty-five years on Count 9 to one day, to run consecutive to his other sentences, for a total prison sentence of 322 months and one day (nearly 27 years). On the government's motion, the court dismissed all other counts against Morgan. After pronouncing the sentence, the court informed Morgan,

> Now, in your plea agreement, you've waived your right to appeal your sentence if you were sentenced within the guideline range, and that waiver is binding unless the sentence exceeds the statutory maximum or is based on a constitutionally impermissible factor. If you undertake to appeal despite your waiver, you might lose the benefits of your plea agreement.

(Tr. 34-35). The court also informed Morgan that "[i]f a right of appeal does exist . . . a notice of appeal must be filed within ten days of the entry of the judgment," and that "[i]f requested to do so, the clerk will prepare and file a notice of appeal on your behalf." (Tr. 35).

After the government argued for the 322-month sentence, the court asked Morgan if he had any statement. (Tr. 28-30). Morgan told the judge his understanding that if he entered the plea agreement, he would receive a sentence of fifteen years, "[b]ecause I have that on paper from Ms. Plagenhoef, in my cell, your Honor." (Tr. 29). Wolthuis speculated that Morgan might be referring to the portion of the plea agreement that reduced Morgan's exposure from sixty-five years of mandatory minimum sentences to fifteen years of mandatory minimum sentences, counting the reduction for substantial assistance as to Count 9. (Tr. 29-30). Wolthuis stated that he was "aware of no conversations relating to coming in with a fixed recommendation that would ignore the sentencing guidelines" on the drug counts. (Tr. 30)..

At the evidentiary hearing, Morgan testified about a conversation he had with Gregory after sentencing. First, he asked Gregory if he had the paper from Ms. Plagenhoef about the fifteen-year sentence deal. Gregory said he did not have the letter with him. Then, Morgan asked, "Can I appeal?" Gregory answered, "No, you signed that option away. Sorry about your luck. Maybe something will happen down the road." Morgan understood his attorney's answer to mean that neither he nor his attorney could file an appeal in the case. He said that he tried to contact his

3

attorney after sentencing, but that he also thought that "it was all over." For this reason, he did not contact the court to ask the clerk to enter a notice of appeal for him.

Gregory has over twenty-five years of experience practicing before this court. He testified that he had known, and had informed Morgan, that Morgan's prior convictions made him a career offender and that this fact would likely push up Morgan's sentencing range under the guidelines. Yet, Gregory also testified that he and Morgan were both disappointed at the length of the sentence. Gregory testified that he did not recall Morgan asking him immediately after sentencing to note an appeal. Gregory also testified that if Morgan had asked him within the ten-day appeal period to file an appeal, he would have filed the notice of appeal, whether or not he believed that the appeal was advisable under the circumstances of Morgan's case or had any chance of success. Gregory testified that he had no record of receiving any communication from Morgan, written or by telephone, within the ten-day appeal period after sentencing. In his file, Gregory did find a letter from Morgan, dated April 9, 2005, in which Morgan asked if Gregory could "advise [him] of what possible appeal opinions are still possible, even with [the] plea agreement." (Deft. Ex. 1).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

It is well established that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). In such situations, the attorney's action causes the defendant to lose his ability to protect his "vital interest at stake" in the appeal process. Evitts v. Lucey, 469 U.S. 387, 396 (1985); Flores-Ortega, 528 U.S. at 477. A habeas petitioner who proves these circumstances is entitled to a renewed opportunity to appeal even if he does not or cannot demonstrate any likelihood that his appeal has any potential merit. Rodriquez v. United States, 395 U.S. 327, 329-30 (1969).

Under these principles, the court concludes that Morgan is entitled to an appeal. The court cannot find from the evidence that Morgan asked counsel, in so many words, "Will you please file a notice of appeal for me," and then relied on counsel to file the notice. This fact pattern is precluded

by Morgan's recollection of his conversation with Gregory and by Gregory's credible testimony that if Morgan had asked him to file a notice of appeal, he would have done so. Morgan clearly knew that Gregory would not be filing a notice of appeal.

Nevertheless, the court finds that after the sentencing hearing, Morgan unequivocally conveyed to Gregory his desire to file an appeal of the sentence by asking, "Can I appeal?" In so finding, the court relies on several specific circumstances of this case. The court finds credible Morgan's testimony that in reliance on the express mention of a fifteen-year sentence in Ms. Plagenhoef's letter and in the plea agreement, Morgan pled guilty because he believed that he would receive a sentence of fifteen years. The court also finds as a matter of fact that Morgan asked Gregory at sentencing for a copy of the letter from Ms. Plagenhoef in order to prove the fifteen-year sentence agreement to the court. This fact is borne out by Morgan's statements during the sentencing hearing and counsel's testimony at the evidentiary hearing that he remembered Morgan expressing disappointment that the sentence was more than fifteen years.

Most importantly, the court finds credible Morgan's testimony about his conversation with Gregory immediately after sentencing. In his pleadings and at the hearing, Morgan consistently remembered the wording of this brief conversation: "Can I appeal?" "No, you signed that option away." Morgan also testified persuasively that after sentencing, he had wanted to appeal[1] and affirmed that there was "no question in his mind" that he had "asked [Gregory] to appeal." At the close of the sentencing hearing, the court explained that in some situations, a sentence might still be appealable even after a waiver of appeal rights. (Sent. Tr. 34-35). Given all of the circumstances the court has noted, Morgan could not reasonably have asked the question "can I appeal" out of idle curiosity. He clearly expected his attorney to understand from the question that he desired to appeal

---

[1]Morgan testified at the evidentiary hearing that he is aware of the sixty-five years of minimum mandatory sentences he faces if the government chooses to treat this action or any appeal he may file as a breach of his plea agreement. Nevertheless, he wishes to appeal his current sentence. If the fifteen-year sentence is not possible, he wishes to forego pleading guilty and take the case to trial before a jury. According to counsel, Morgan believes that whether the sentence is twenty-seven years or sixty-five years does not matter, as he will die in prison either way because of his age and medical problems.

5

the sentence and wanted counsel's help to accomplish that purpose if an appeal was possible.

The court also finds credible Morgan's testimony that to his question, "Can I appeal," Gregory responded, "No, you signed that option away."[2] This response was not inaccurate in terms of whether claims on appeal were likely to be viable, in light of the plea agreement waiver provision. The response was not accurate from a technical perspective, however, as Morgan could have filed an appeal of the sentence, despite the waiver and whether or not the appeal stood a chance of success. Morgan took counsel's response to mean that he could not file an appeal. For that reason, he did not pursue the issue further with Gregory until much later, long after the time for filing a direct appeal had run.[3] Morgan also did not try to file a notice of appeal on his own or ask the clerk to enter one, because based on counsel's answer, he believed that he could not do so. The court finds that counsel's response to Morgan's question about an appeal thus caused Morgan to lose his ability to "protect his vital interest" in appealing. Accordingly, under Evitts and Rodriquez, Morgan has established a claim of deprivation of counsel on appeal and need not prove that his appeal has any likelihood of success. 469 U.S. at 396; 395 U.S. at 329-30. Therefore, the court will grant Morgan's § 2255 motion as to this one claim and will give him a renewed opportunity to appeal. Appropriate orders will be entered in this case and in Case No. 7:03-cr-00084.

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the parties.

ENTER: This ___ day of November, 2006.

_____
Senior United States District Judge

---

[2]Counsel's inability, two years after the fact, to remember this conversation about the appeal question is not inconsistent with the court's finding here that Morgan attempted to ask for an appeal.

[3]Morgan's April 2005 letter to counsel, regarding appeal options, must be liberally construed as with any pro se pleading. The court finds it likely that Morgan used the word "appeal" to inquire whether any avenue of post-conviction relief (belated appeal, habeas action, or sentence reduction motion) was then available for him to challenge his sentence.